**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRAMER CONSULTING, INC.** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. C2-02-116** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **KEVIN MCCARTHY,** *et al.* | : | **Magistrate Judge Abel** |
| | : | |
| **Defendant.** | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court pursuant to the following motions brought by Defendant, Kevin McCarthy ("McCarthy"): (1) Motion for New Trial and Remittitur; and (2) Motion to Strike Post-Judgment Notice of Filing of Plaintiff's Trial Counsel's Time and Billing Statement.

**II. STATEMENT OF FACTS[1]**

**1. Background**

Plaintiff, Kramer Consulting, Inc. ("KCI" or the "Company") is a computer consulting firm based in Dublin, Ohio that developed and markets a computer software product known as "AUTO-CODE™."  In May 2000, Plaintiff entered into a business agreement with Defendant, Kevin McCarthy ("McCarthy"), and his company, Xcel Computers ("Xcel"), which had maintained a business relationship with KCI for several years prior to the Parties' transaction.

On May 5, 2000, KCI sold McCarthy 430 shares of its stock (a 43% stake in KCI) for

_____

[1]The Statement of Facts is adopted, in part, the Court's findings on Summary Judgment and from those found at trial.

-1-

$107,500 and the Parties signed a stock purchase agreement (the "PA") and an employment agreement (the "EA"), which set forth the terms of McCarthy's employment by KCI.  Instead of paying cash for these shares, McCarthy gave KCI a $3,999 down payment and a cognovit promissory note in the amount of $107,500.  The PA called for McCarthy to pay KCI forty-eight monthly payments of $2,574.22.

As per the Parties' agreement, McCarthy became a director and the chief financial officer ("CFO") of KCI.  Accordingly, McCarthy assumed the bookkeeping and sales management duties for KCI, as well as other duties marketing the AUTO-CODE™ product.  Nonetheless, the relationship between KCI and McCarthy deteriorated shortly after it began.  As ordered by McCarthy, Xcel began to bill KCI thirty-five dollars per hour for the services performed by Xcel employees who McCarthy hired to perform a number of different tasks for KCI, including bookkeeping.  According to Plaintiff, as of March 2001, McCarthy had written checks to Xcel for approximately $22,930.38.

KCI did not completely object to these charges, but certain KCI officials believed that the Company could not afford to pay for the outside services.  Even so, in his capacity as a KCI director and officer, McCarthy *always* paid Xcel's bills ahead of KCI's other operating expenses, and certain bills for KCI's utilities, insurance, payroll taxes, and other business expenses consistently went unpaid.

Accordingly, the relationship between KCI and McCarthy worsened, and, in 2001, McCarthy and a financially strained KCI severed their employment relationship.  Although McCarthy retained his stock in KCI, Company officials informed him that they no longer wanted his services.

-2-

Between May 2000 and January 2001, McCarthy made only four payments toward his cognovit promissory note, in addition to his initial $3,000 payment.  In July 2000, McCarthy paid $3,000, in October 2000, he made two payments of $8,000 and $4,000, and in January 2001, he paid $2,600.  In total, this adds up to $20,600 in payments, none of which were timely. Because McCarthy has made *no* further payments on the Note since January 2001, as of that date, he still owed KCI $86,900 before interest.  *Id*. (emphasis added).

## 2. Procedural History

Looking to recover the money McCarthy had agreed to pay the Company under the Note,

KCI filed its first lawsuit against McCarthy in the Common Pleas Court of Franklin County, Ohio, on December 14, 2001 (the "Cognovit Note Case").  In that case, KCI claimed that McCarthy was in default on the Note and that KCI was entitled to judgment for the balance due thereon.  The Common Pleas Court entered judgment against McCarthy on December 20, 2001. McCarthy subsequently removed the case to federal court.  Shortly thereafter,  on September 6, 2002, this Court granted McCarthy's motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) finding that he had a valid defense to KCI's default argument because the Note would not become due until June 1, 2004.

KCI filed a second lawsuit in the Franklin County Common Pleas Court on December 14, 2001 (the "Fraud Case").  In that case, KCI sought damages against McCarthy based upon claims of fraud, conversion, embezzlement, and breach of fiduciary duty.  McCarthy also removed the Fraud Case to this Court.  In McCarthy's answer, he asserted a counterclaim against KCI, alleging that pursuant to the EA, KCI was required to repurchase his 430 shares of stock.

On September 26, 2003, Plaintiff's Motion for Summary Judgment in the Cognovit Note Case was denied, and Defendant's Motion for Summary Judgment on Plaintiff's claims in the Fraud Case was granted with respect to Plaintiff's fraud, conversion, and embezzlement claims, but denied with respect to Plaintiff's breach of fiduciary duty claim.  Further, Defendant's Motion for Summary Judgment on McCarthy's Counterclaim in the Fraud Case was granted, and Plaintiff's Motion to Strike Defendant's Reply Memorandum in the Fraud Case was denied.

KCI then filed a second Motion for Summary Judgment in the Cognovit Note Case in which it petitioned this Court to grant judgment in its favor because, by that point, McCarthy was in default under the Note, which had become due and payable on June 1, 2004.  After hearing Oral Arguments on the matter, on January 25, 2005, the Court granted Plaintiff's Motion for Summary Judgment with respect to Defendant's default status under the Note, but denied it with respect to Plaintiff's request for a judgment in the amount of $114,342.22, as of July 1, 2004.

Shortly thereafter, the Court ordered the Parties to value Defendant's stock in accordance with Section 10 of the EA, and ordered Defendant to pay Plaintiff the positive difference, if any, in the value of Defendant's stock and the outstanding balance on the Note, in addition to interest as provided in the Note itself.  Moreover, the Court ordered Defendant to relinquish its stock certificate to Plaintiff for a credit against the Note if the amount he owed Plaintiff under the Note exceeded the value of his shares of stock.  As such, the Parties obtained a valuation of Plaintiff's shares of KCI stock, and the Court ordered that Defendant pay Plaintiff $127,416.67, with interest at seven percent from June 1, 2005 onward.

After the Court ruled on the Parties' cross-motions for summary judgment in 2003, the

-4-

only issue left for trial was KCI's claim against McCarthy alleging that he breached his fiduciary duties as a KCI director and officer.  The fiduciary duty claim was tried before a jury from May 16 through May 18, 2005.  On May 18, 2005, the jury awarded Plaintiff compensatory damages of $49,000 and punitive damages of $150,000.  Additionally, the jury concluded that Plaintiff should be awarded attorney's fees to be determined by the Court.  *See* Gen. Verdict Forms 1-3.

At the conclusion of the trial, the Court set out a briefing schedule calling for Plaintiff's memorandum and supporting evidence for attorney's fees to be filed on or about June 7, 2005.  Accordingly, Plaintiff's Counsel, Theodore R. Saker, Jr. ("Saker"), timely submitted his Post-Judgment Notice of Filing of Plaintiff's Trial Counsel's Time and Billing Statement (the "Notice") to the Court requesting $22,940.73 in attorney's fees.  *See* Pl.'s Notice.

Defendant filed both the Motion for New Trial and Remittitur and the Motion to Strike Plaintiff's Notice of Filing of Plaintiff's Trial Counsel's Time and Billing Statement that are currently at issue.  In his Motion for New Trial and Remittitur, Defendant claims that the jury verdict "provide[s Plaintiff with] excessive damages, influenced by bias, passion, and/or prejudice," and that Plaintiff has been afforded an unlawful "double recovery of compensatory damages from the Defendant." *See* Def.'s Motion for New Trial at 1.  Further, Defendant moves that if the Court chooses to deny his motion for a new trial on the issue damages, the Court should, in the alternative, amend the verdict by granting him a remittitur of $23,148 in compensatory damages to prevent Defendant's double recovery and grant a new trial on the issue of punitive damages.  *Id*.  Finally, Defendant moves that if the Court denies his motion for a new trial *in toto*, the Court should amend its previous judgment by granting a remittitur of both compensatory damages and punitive damages.  On October 15, 2005, while the foregoing

motions were pending before this Court, Defendant filed Chapter 7 Bankruptcy in the Northern District of Indiana Bankruptcy Court (South Bend Division).  On October 21, 2005, he filed a Notice of Bankruptcy in this case.

### III. Standard of Review

Rule 59 allows parties to move for a court to alter or amend a previously issued judgment.  *See* FED. RULE CIV. PRO. 59.[2]  Determining whether a new trial is appropriate is within the discretion of the trial court under Rule 59 of the Federal Rules of Civil Procedure. *See Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000).

Generally, courts are permitted to grant a new trial if a previous judgment "is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or [was] otherwise unfair to the moving party."  *See Conte*, 215 F.3d at 637. Moreover, a trial court has the discretion to "order a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)."  *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 433 (1996).   The excessiveness of a verdict is primarily a "matter. . . for the trial court which has the benefit of hearing the testimony and of observing the

---

[2]Rule 59(a) states:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

*See* FED. RULE CIV. PRO. 59(a).

demeanor of the witnesses." *Id.* (citing *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 922 (8th Cir. 1986)).

Though a "jury's verdict should be accepted if it is one that could reasonably have been reached," the Supreme Court has explained that, "[w]here [a] verdict returned by a jury is palpably and grossly inadequate or excessive, it should not be permitted to stand; but, in that event, both parties remain entitled, as they were entitled in the first instance, to have a jury properly determine the question of liability and the extent of the injury by an assessment of damages." *See Conte*, 215 F.3d at 637; *Dimick v. Shiedt*, 293 U.S. 474, 486 (1935).

## IV. ANALYSIS

### A. Whether the Court Should Grant Defendant a New Trial on the Issue of Damages Under Rule 59(a)

In this case, Defendant argues that the evidence adduced at trial does not support the jury's verdict of $49,000 compensatory damages, $150,000 punitive damages, and a Court-determined amount of attorney's fees.  According to Defendant, the evidence at trial "only support[s] a recovery of a maximum of $25,930.38 based on the four checks [McCarthy wrote to Xcel plus] $3,000 in late fees."  Therefore, because the jury arrived at $49,000 in damages, which is close to the $49,078.38 figure provided by Plaintiff's counsel in his closing argument, the Defendant opines that the verdict was against the weight of the evidence.  Accordingly, Defendant asserts that, under Rule 59(a), the Court should grant the Parties a new trial *solely* on the issue of damages.  *See Gasperini*, 518 U.S. at 433 (the trial court has the discretion to order a new trial without qualification).

The Plaintiff's counsel, however, disagrees, and, at trial, he expressly laid out for the jury, the arithmetic he used to arrive at the approximately $49,000 of compensatory damages he

requested for the Plaintiff.  His explanation follows:

> The jury had before it Joint Exhibits 1 through 3, the four checks Defendant wrote to Xcel, that totaled $22,930.88.  The jury had Exhibit P-10, the stock purchase agreement to consider, and was able to calculate the amount Defendant should have paid to Plaintiff from the terms thereof. . . .Defendant promised to make payments on the stock purchase not once but twice (Exhibits J-12 and J-16) and testified that he did not do that. Defendant presented no evidence that he made any effort to pay Plaintiff for the purchase of the stock that resulted in any real gain to the company as contemplated by the [N]ote (Exhibit P-9), the stock purchase agreement (Exhibit P-10) and the employment agreement (Exhibit J-10).  The lack of the [$2,574.22] monthly payments, coupled with Defendant's pillaging of Plaintiff's funds, quite effectively hamstrung Plaintiff from obtaining the benefit of the bargain.  The jury was able to refer to Exhibit P-10 and, from the provisions thereof, multiply the amount of the monthly stock purchase payment, $2574.22, by nine (the number of months Defendant served as CFO), to arrive at the product, $23,168.  At that point, it became a matter of simple addition [– the jury added the $23,168 in delinquent Note payments to the $22,930.88 in checks written to Xcel to arrive at $49,078.38].

Pl.'s Memo Contra at 3.

A trial court is within its discretion in remitting a verdict, and/or granting a new trial on the issue of damages only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice, or is so excessive or inadequate as to shock the conscience of the Court.  *See Jones v. Wittenberg Univ.*, 534 F.2d 1204, 1212 (6th Cir. 1976).  If there is *any credible evidence* to support a verdict, it should not be set aside.  *See Wertham Bag Co. v. Agnew*, 202 F.2d 119 (6th Cir. 1953).  A trial court may not substitute its judgment or credibility determinations for those of the jury, and it abuses its discretion in ordering either a remittitur or a new trial when the amount of the verdict turns upon conflicting evidence.  *See Farber v. Massillon Bd. of Ed.*, 917 F.2d 1391, 1395.  Considering the detailed explanation by Plaintiff's counsel laid out above, the Court is persuaded that the Jury based its verdict upon substantial evidence.  Hence, the Court cannot overturn the jury's verdict as being "shocking to the conscience."  *Id*.

Nevertheless, though the Court will not grant Defendant's motion for a new trial based upon his argument that the verdict was against the weight of the evidence, the Court is persuaded by Defendant's argument that $23,148 of the Jury's compensatory damages award amounts to an unlawful "double recovery" for Plaintiff.[3]  *Id*. at 8.

According to Defendant, Plaintiff is not entitled to bring an action to recover on the Note[4] *and* to claim damages for breach of fiduciary duty on the Note for "depriving Kramer Consulting of cash flow necessary to sustain the company, which resulted in the company's demise."  *See id*. Defendant asserts, that, if the Court allowed Plaintiff to pursue both methods of recovery, the Plaintiff would receive the benefit of the $20,600 that Defendant paid out over the course of his employment as well as recover the $23,148 which Plaintiff alleged amounted to "deprived cash flow."  *Id*.

The law abhors duplicative recoveries, and a plaintiff who is injured by a defendant's misconduct is, for the most part, entitled to be made whole, not enriched.  *See Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996); *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1332 (10th Cir. 1997) (double recovery is precluded when alternative theories seeking the same relief are pled and tried together).  Accordingly, a plaintiff who alleges separate causes of action is not permitted to recover more than the amount of damage actually suffered; there cannot be double recovery for the same loss, even though different theories of liability are alleged in the

---

[3]According to Defendant, if the Plaintiff were to recover for the four checks and the supposedly deprived $23,148 in cash flow, he would be compensated twice.  *See* Motion for New Trial at 8.

[4]As noted in the Statement of Facts, the Court granted Plaintiff Summary Judgment in its Cognovit Note action, awarding KCI $127,416.67 on the Note.

complaint.  *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490 (2d Cir. 1995) (a plaintiff is not entitled to a separate compensatory damage award under each legal theory when he relies on alternate theories of liability; instead, he is entitled to one compensatory damage award if liability is found on any or all of the theories).

Though the Court agrees with Plaintiff's assessment that the $23,148 figure can be viewed as "deprived cash flow" resulting from Defendant's breach of fiduciary duty[5], the Court is persuaded that Plaintiff has already recovered that $23,148 when the Court ordered Defendant to pay off the Note on Plaintiff's Motion for Summary Judgment.[6]  As KCI already recovered for its loss in its Cognovit Note Case, it is unfair for the Company to recover the same funds again by way of a different claim.  As such, the only damages that the Plaintiff should recover based on a breach of fiduciary duty claim are the $22,930.38, arising from four checks McCarthy paid to Xcel out of KCI's account plus the $3,000 it owed in late fees.  Hence, the Court agrees with Defendant's contention that, should the Court allow Plaintiff $49,000 compensatory damages

---

[5]Defendant argues that the $23,168 Plaintiff owed on the Note is derived from a breach of contract, not a breach of fiduciary duty, and that, therefore, Plaintiff may not recover the funds on its breach of fiduciary duty claim.  Nonetheless, Plaintiff counters that the funds actually amount to a deprivation of cash flow arising from Defendant's breach of fiduciary duty.  According to Plaintiff, Defendant's positions as both KCI CFO and as a Company director endowed him with statutory duties independent of his contractual liability to refrain from the self-dealing he engaged in, as well as the duty to make timely payments on the Note so that KCI had the funds to pursue the marketing plans that the Company had initially hired him to perform.  Nonetheless, Defendant clearly breached these fiduciary duties when he paid Xcel with $22,930.88 from KCI's account and when he failed to pay off the $23,168 he owed on the Note.  Together, these funds amount to $49,078.38 in deprived cash flow for KCI.  The Court is persuaded by Plaintiff's logic, and considers the $23,168 to be recoverable under Plaintiff's breach of fiduciary duty claim.

[6]*See supra* Part II.B.  According to the Court's decision granting Plaintiff Summary Judgment on its Cognovit Note Case, Defendant owes Plaintiff $127,416.67 with interest at 7% from June 1, 2005 onward.

verdict to stand, it would lead to a palpably unjust result.  As such, conditioned on the Plaintiff's agreement, the Court **GRANTS** Defendant a remittitur of the $23,148 compensatory damages that he was required to pay the Plaintiff on the Note.  Accordingly, Defendant owes Plaintiff $25,952 in compensatory damages.  Should, however, the Plaintiff refuse to remit, the Court will **GRANT** Defendant's Motion for a new trial on the issue of damages.

### B. Whether the Court Should Grant a New Trial
### or a Remittitur on the Issue of Punitive Damages

Defendant's arguments do not end with the issue of compensatory damages.  Defendant also argues that: (1) he is entitled to a new trial on the issue of punitive damages; and (2) if the Court decides he is not entitled to a new trial, it should at the very least award him a remittitur of punitive damages.  *See* Def.'s Motion for New Trial at 11; OHIO REV. CODE ANN. § 2315.21(D)(2)(b) ("tort reform III").

### 1. Whether the Court should grant a New Trial on the Issue of Punitive Damages

Section 2315.21(D)(2)(b) of the Ohio Code, which was amended on April 7, 2005, states: "[i]f the defendant is a[n]. . . individual, the Court shall not enter judgment for punitive or exemplary damages in excess. . . of two times the compensatory damages awarded to the plaintiff from the defendant. . . ."  *See* OHIO REV. CODE ANN. § 2315.21(D)(2)(b). Defendant contends that, applying the statute remedially, he is entitled to a remittitur of punitive damages, which amount to approximately three times the amount of compensatory damages.  *See* Def.'s Motion for New Trial at 12.  Plaintiff, however, counters that "tort reform III" does "not apply to the case at bar" because "the claim that survived summary judgment was a *statutory* claim for breach of fiduciary duty pursuant to Ohio Revised Code § 1701.59, not a "tort action" within the meaning of § 2315.21."  *See* Pl.'s Memo Contra at 12.  According to Plaintiff, § 1701.59

contains its own remedies provision, and the plain language of the statute makes clear that the legislature had not intended to bar a civil remedy under the statute.  As such, the Court must consider the following issues: (1) whether § 2315.21 applies retroactively; and (2) if so, whether § 2315.21 applies in the context of a claim that an officer or director has breached his fiduciary duty to his company.

### a. Whether § 2315.21 Applies Retroactively

In arguing that the amended version of § 2315.21 should apply retroactively to this case, Defendant relies on *French v. Dwiggins*, in which the Ohio Supreme Court held that "[i]n the case of procedural or remedial legislation, the legislation will be applied to all proceedings occurring after the effective date regardless of the point of accrual."  *See* 458 N.E. 2d 827 (Ohio 1984).  In *French*, the plaintiff asked court to apply a law that was amended after she had filed her initial wrongful death suit.  *Id.* at 828.  The law, as amended, would increase the amount of plaintiff's recovery, and the court found that such a ruling was acceptable because the statute changed only the *scope* of recovery, without affecting the *substance* of the defendant's liability. *Id.* (emphasis added).

Defendant concedes that *French* has been questioned by some Ohio state courts, but argues that it should apply to this case because the Ohio Supreme Court has "not overruled it." *See* Def.'s Motion for New Trial at 12.  Nevertheless, the Defendant selectively overlooks *Erie Cty. Drug Task Force v. Essian*, in which the Ohio appellate court noted, "[w]e are aware of a line of cases which seems to exempt procedural and remedial statutes from this presumption. *French v. Dwiggins*, 458 N.E. 2d at 827; *Kilbreath v. Rudy*, 242 N.E.2d 658 (Ohio 1968).  Our view is that *Van Fossen* and *Warren Cty. Bd. of Commrs.* implicitly overruled these cases." *See*

610 N.E.2d 1181, 1183 n.2 (Ohio App. 1992). *See Van Fossen v. Babcock & Wilcox*, 522

N.E.2d 489 (Ohio 1988) (holding that in order for the court to determine if the legislature's

attempt is consistent with the Constitution, Ohio statutes are presumed to be applied

*prospectively only* and finding that the presumption can be overcome only where the legislature

specifically states that the statute is to apply to pending cases) (emphasis added); *see Warren*

*Cty. Bd. of Commrs. v. Lebanon*, 540 N.E.2d 242, 244-245 (Ohio 1989) (same). In this case, the

General Assembly did not specifically make § 2315.21 applicable to pending cases; thus the

amendment is not to be applied to them. Accordingly, § 2315.21 does not apply to negate

Plaintiff's $150,000 punitive damages award.

**b. Whether § 2315.21 Applies in the Context of a Breach of Fiduciary Duty Claim**

In addition to contesting whether § 2315.21 applies retroactively, the parties also debate

whether the "tort reform III" statute is applicable to cases brought under § 1701.59, for breach of

fiduciary duty. Defendant argues that though breach of fiduciary duty has been codified by Ohio

statutory law, it still has roots in common law, and, therefore, is still considered a tort. *See*

Def.'s Reply at 6. Nonetheless, according to Plaintiff, because § 1701.59 contains its own

remedies, absent a clear indication from the Ohio General Assembly that such claims fall within

the purview of "Tort Reform III," such remedies do not fall within the limitations contained in

§ 2315.21. *See* Pl.'s Memo Contra at 12.

The Ohio Supreme Court observes the principle that because the Ohio General Assembly

knows how to apply a limit to the amount of punitive damages available under a statutory claim,

if the statute does not explicitly specify such a limit, one should not be applied. 573 N.E.2d

1056 (Ohio 1991) ("Had the General Assembly meant to limit the availability of the civil action

-13-

remedy to those instances in R.C. Chapter 4112 where it was already provided, it would have identified the section to which R.C. 4112.99 applied. . . Instead its language applies to any form of discrimination addressed by R.C. Chapter 4112."); *see also, Greeley v. Miami Valley Maintenance Contractors, Inc.*, 551 N.E.2d 981 (Ohio 1990) ("Had the General Assembly intended to bar a civil remedy to workpersons situated similarly to appellant, it certainly knew how to do so," so, as it did not, no such bar applies); *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308 (Ohio 1997) ("the mere existence of statutory remedies for violations of R.C. § 4113.52 does not operate as a bar to alternative common-law remedies for wrongful discharge in violation of the public policy embodied in the Whistleblower Statute"); *Rice v. CertainTeed Corp.*, 704 N.E.2d 1217 (Ohio 1990) (despite a lack of specific statutory language, R.C. § 4112.99 authorizes awards of punitive damages in employment discrimination actions).

In *Rice*, the Ohio Supreme Court establishes a paradigm for construing Ohio statutes. *See* 704 N.E.2d at 1219. The court explains,

> [i]n construing a statute, a court's paramount concern is the legislative intent in enacting the statute. To this end, we must first look to the statutory language and the "purpose to be accomplished." In assessing the language employed by the General Assembly, the court must take words at their usual, normal, or customary meaning. Most important, it is the court's duty to "give effect to the words used [and to refrain from] insert[ing] words not used.

*Id*. (internal citations omitted). Applying this analysis to R.C. § 2315.21, the definition of "tort action" does not apply to the § 1701.59 claim the parties tried before a jury. In that statute, the legislature stated:

> [a] director shall be liable in damages for any action that the director takes or fails to take as a director only if it is proved by clear and convincing evidence in a court of competent jurisdiction that the director's action or failure to act involved an act or omission undertaken with deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interests of the corporation.

-14-

*See* OHIO REV. CODE § 1701.59. Considering the above language, the Court finds that the Ohio legislature clearly did not intend to include a breach of fiduciary claim against corporate officers and directors within the purview of the "Tort Reform III" statute. As such, whether it is considered retroactively or prospectively, R.C. § 2315.21 is inapplicable to Plaintiff's claim.

### 2. Proportional Remittitur

Defendant also argues that should the Court decide that he is not entitled to a new trial on the issue, it should at the very least award him a remittitur of either $70,861.22[7] or $98,296[8] in punitive damages.

Unlike with compensatory damages, the jury is given wide discretion to determine whether punitive damages are justified and in assessing the amount of such damages based upon its collective judgment as to the punitive and deterrent effect that such an award would have. *See Smith v. Wade*, 461 U.S. 30, 50-51 (1983) (noting the common law distinction between the mandatory nature of compensatory damages upon a finding of liability and the discretionary nature of punitive damages based upon the jury's "moral judgment"); *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397 (Ohio 1994) (under common law, initial discretion to determine whether to award punitive damages and the amount thereof resides with the jury).

---

[7]The Defendant asserts that, if the Court "[d]etermines that § 2315.21 as amended *does not* apply to this case, the Court must nevertheless grant remittitur of punitive damages in the amount of $70,861.22." *See* Def.'s Motion for New Trial at 13. Defendant explains that the compensatory damages the Court should remit amount to $23,148, which equals approximately 47.24 % of the $49,000 compensatory verdict. *See id*. Therefore, the Court should also grant Defendant a remittitur of 47.24'% of $150,000 which equals $70,861.22.

[8]Defendant asserts that granting the Defendant a $23,148 compensatory damage award would result in $51,704 in punitive damages that can be awarded by Ohio law. *See* Def.'s Motion for New Trial at 12 (finding that $49,000 - $23,148 = $25,852 (x 2 ) = $51,704 and 150,000 - $51,705 = $98,296).

At trial, this Court properly instructed the jury on these standards and the jury awarded Plaintiff $150,000 in punitive damages. Though Defendant argues that the jury's award of punitive damages for Plaintiff must be proportionally reduced in line with the compensatory damages[9], Defendant fails to put forth any legal precedent in support of its argument. Further, because the jury had the prerogative, although not the obligation, to award appropriate punitive damages for Defendant's malicious breach of his fiduciary duty, the Court will not now, *sua sponte*, overturn the jury's decision. Therefore, the Court **DENIES** Defendant's motion for a remittitur of punitive damages.

### B. Motion to Strike

After ruling on Defendant's Motion for a New Trial and/or Remittitur, this Court now considers the merits of Defendant's Motion to Strike the Notice submitted by Plaintiff in support of its request for attorney's fees.

Rule 12(f) permits the court to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. CIV. R. PROC. 12(f).[10] It cannot be gainsaid that, "because of the practical difficulty of deciding cases without a factual record it is well-established that the action of striking a pleading should be sparingly used by the courts.

_____

[9]*See supra* notes 7 & 8.

[10]Rule 12(f) states:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

FED. RULE CIV. PRO. 12(f).

It is a drastic remedy to be resorted to only when required for the purposes of justice."[11]  *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted).  Though many courts disfavor motions to strike for fear that they serve only to delay, they can also expedite cases by removing "unnecessary clutter."  *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

Defendant rests his Motion to Strike the Notice on the following grounds: (1) the question of attorney's fees is moot if the Court decides to award Plaintiff punitive damages, as those would be adequate both to compensate for fees and to fulfill the deterrent and punitive purposes of punitive damages; (2) the Notice and its attachments do not comport with either Local Rule 7.2(a)(1)[12] or Federal Rule of Civil Procedure 54(d)(2)(A)[13]; and (3) the time and billing statement attached to the Notice is not evidence and does not meet the requirements for a

---

[11]Courts interpret "the interests of justice" to include concerns such as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

[12]Rule 7.2(a)(1), "Supporting Memorandum and Certificate of Service," states:

[a]ll Motions and applications tendered for filing shall be accompanied by a memorandum in support thereof which shall be a brief statement of the grounds, with citation of authorities relied upon.  Except in the case of a motion or application permitted by law to be submitted *ex parte*, a certificate of service. . . shall accompany all such papers.

*See* S.D. OHIO LOC. RULE 7.2.(a)(1).

[13]Rule 54(d)(2)(A) provides, "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial."  *See* FED. R. CIV. PRO. 54(d)(2)(A).

motion under Local Rule 7.2(e).[14]  The Court will consider the merits of each of Defendant's

above arguments.[15]

### a. Whether Attorney's Fees are Justified

Defendant first contends that the jury was not justified in granting Plaintiff attorney's

fees.  He asserts that, should the Court decide to award Plaintiff punitive damages, those

damages alone would be sufficient both to compensate Plaintiff for attorney's fees and to fulfill

the deterrent purposes of punitives.  *See Digital Analog Design Corp. v. N. Supply Co.*, 590

N.E.2d 737, 743 (Ohio 1992) (". . . if the court concludes that the punitive damages are sufficient

to fulfill [deterrent purposes] without the imposition of attorney fees, the court may decline to

award such fees, even if a jury has determined that such fees should be awarded").

In support of his argument, Defendant primarily relies upon *Toole v. Cooke*, an Ohio case

in which a trial court denied a plaintiff's request for attorney's fees.  *See* 1999 Ohio App. LEXIS

2040 (Ohio App. May 6, 1999).  In *Toole*, the plaintiff computed her request for $250,000 in

attorney's fees based upon her contingency fee agreement with counsel.  *Id.*  Nevertheless, the

---

[14]Rule 7.2(e), "Evidence Supporting Motions – Deadlines," states, in relevant part:

When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum relying on such evidence.  Evidence used to support a reply memorandum shall be limited to that needed to rebut the positions argued in memoranda in opposition. . . .

[15]In its Motion to Strike, Defendant also argued that a determination of the award of attorney's fees is not yet ripe for adjudication and should be deferred until the Court rules on Defendant's pending post-trial motions for a new trial and/or remittitur.  *See* Def.'s Motion to Strike at 1.  Nonetheless, because this Court considered Defendant's Motion for a New Trial and/or Remittitur *before* considering the Motion to strike, the issue of attorney's fees is now ripe for review.

-18-

trial court denied her request, finding that the amount of fees requested was more than half the amount of the plaintiff's total award and that the award of punitive damages alone was sufficient to compensate both plaintiff and her attorney. *Id.*

This Court is persuaded, however, that the case at bar is easily distinguished from *Toole*. *See* 1999 Ohio App. LEXIS 2040. In this case, the amount of fees and expenses requested for attorney's fees amounts to $22,940.73, which is roughly ten percent of the jury's award, and, therefore, not unreasonable to the extent of the fees requested by plaintiff in *Toole*. Furthermore, the fee award does accomplish the goals of punitive damages, which is to require McCarthy to bear the costs of bringing him to justice. As such, the Court finds that Defendant has not rebutted the presumption that the jury's decision to award Plaintiff attorney's fees was reasonable in light of Defendant's actions.

### b. Whether the "Notice" Meets the Requirements of Local Rule 7.2.(a)(1) or Federal Rule of Civil Procedure 54(d)(2)(a)

Next, Defendant contends that because Plaintiff failed to attach a supporting memorandum to the Notice, it must be stricken. *See* Def.'s Motion to Strike at 3. Under Local Rule 7.2(a)(1) and Federal Rule of Civil Procedure 54(d)(2)(A), a party's claim for attorneys' fees "shall be made by motion," for which the party must provide the supporting materials according to the schedule set forth by the Court. *See* S.D. OHIO CIV. R. 7.2.(a)(1); FED. R. CIV. PRO. 54(d)(2)(A). Essentially, Defendant contends that by filing an unsupported billing statement, Plaintiff's attorney has unfairly prevented Defendant from reviewing and responding to Plaintiffs' arguments and evidence.

In making its assertions, Defendant primarily relies upon *Logan Farms v. HBH, Inc.*, which the Court finds to be distinguishable from the case sub judice. *See* 282 F. Supp. 2d 776,

-19-

796 (S.D. Ohio 2003).  In *Logan Farms*, the plaintiff filed a motion for a "change of forum" without a supporting memorandum, and the Court denied the motion for failure to support it properly with argument or citation to case law.  *Id*.  In contrast to Plaintiffs in *Logan Farm*, the jury here has *already* ruled that the plaintiff should recover attorney's fees.  *Id*. (emphasis added); *see* Gen. Verdict Form 3.  Hence, whether Plaintiff should have the opportunity to receive attorney's fees is not in dispute, and Plaintiff need only to present evidence supporting its request for attorney's fees – the Notice.  It would be a waste of the Court's time to consider Plaintiff's argument in support of attorney's fees when the jury has already decided to award Plaintiff those fees.  Here, where the request for attorney's fees was appropriate, the Jury's decision stands.

### b. Whether the Plaintiffs' Time and Billing Statements Fail to Meet Requirements of "Evidence" Under Local Rule 7.2.(e)

According to Local Rule 7.2.(e), "[e]vidence shall be presented, in support of or in opposition to any Motion, using affidavits, declarations pursuant to 28 U.S.C. § 1746, deposition excerpts, admissions, verified interrogatory answers, and other documentary exhibits."  *See* S.D. OHIO CIV. R. 7.2(e).  Defendant asserts that because Plaintiff has provided no affidavit confirming the accuracy and reasonableness of the attorney's fees attached to the Notice, and has provided no other admissible evidence to which Defendant may respond, the "Notice" does not meet the requirements, and the Court should strike it from the record.  *See* Def.'s Motion to Strike at 6-8.

Plaintiff, however, counters that Rule 7.2(e) is simply inapplicable to Plaintiffs' notice because it is not to be considered a "Motion" under the rules.  *See* Pl.'s Memo Contra at 7. Further, Plaintiff asserts that Jury Interrogatory No. 3 states that if the jury found Defendant

-20-

liable for attorney's fees, the Court would establish the amount, and there are no provisions in either the Rules of Civil Procedure or the Local Rules that prescribe what form the Notice had to be filed. *Id.*

The United States Supreme Court has prescribed the "lodestar" method for calculating reasonable attorney's fees, which requires a multiplication of the "number of hours reasonably expended on the litigation times a reasonable hourly rate." *See Blanchard v. Bergergon*, 489 U.S. 87, 94 (1989) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The lodestar is strongly presumed to yield a "reasonable" fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). "Reasonable fees" are to be calculated according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney. *See Blum*, 465 U.S. at 895. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 896 n.11.

In this case, the Plaintiff filed a Notice that apprised the Court of the hours of work performed, and the amount of money spent; however, the Notice did not include an affidavit explaining in detail those costs. As such, the Court agrees with Defendant that Plaintiff's Notice fails to provide enough evidence to inform and assist the Court in exercising its discretion to award just and reasonable attorney's fees. *See Blum*, 465 U.S. at 895-96. Therefore, the Court **GRANTS** Defendant's Motion to Strike the Notice, and orders Plaintiffs to re-file an amended Notice which includes a detailed affidavit supporting Plaintiffs' requested attorney's fees.

-21-

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial is **DENIED**, conditioned upon the Plaintiff's agreement with the Court's decision to **GRANT** Defendant a remittitur of $23,148 in compensatory damages.  The Defendant's Motion for a New Trial and/or Remittitur on the issue of punitive damages is **DENIED**.  Defendant's Motion to Strike Plaintiff's Notice of Filing of Plaintiff's Trial Counsel's Time and Billing Statement is **GRANTED** and Plaintiff must file an amended Notice with a memorandum in support thereof by close of business on Wednesday, **March 15, 2006**.  Defendant will then have until **Wednesday March 22, 2006** to respond to Plaintiff's amended Notice.

**IT IS SO ORDERED.**


  s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 8, 2006**